UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER ANDREW HARTLEY,<br><br>Plaintiff,<br><br>v.<br><br>D. BRIGHT, et al.,<br><br>Defendants. | Case No. 23-cv-00767-PCP<br><br>**ORDER OF SERVICE IN PART; ORDER DENYING MOTIONS TO BE APPOINTED PRO BONO COUNSEL AND TO PROCEED IN FORMA PAUPERIS ON APPEAL**<br><br>Dkt. Nos. 27, 30 |

Roger Hartley, an inmate at the California Institute for Men in Chino, California, filed this *pro se* civil rights action under 42 U.S.C. § 1983 regarding events that occurred at Salinas Valley State Prison ("SVSP"). The Court concluded that Mr. Hartley's original complaint failed to state any claim and dismissed with leave to amend as to some defendants. Dkt. No. 15. Mr. Hartley filed a first amended complaint that suggested that his claims were time-barred, and the Court accordingly dismissed the action entirely. Dkt. No. 19. Mr. Hartley moved to re-open the case, explaining that his claims arose more recently than his first amended complaint had stated. Dkt. No. 21. The Court accordingly reopened this action. Dkt. No. 25.

Mr. Hartley filed a second amended complaint ("SAC") that is now before the Court for review. Dkt. No. 26. For the reasons stated below, the Court concludes Mr. Hartley has stated a cognizable Eighth Amendment claim against defendant Bright and orders service of the SAC upon that defendant.

Mr. Hartley filed a second motion to be appointed pro bono counsel. Dkt. No. 27. This motion is DENIED without prejudice to renewal at a later time.

Mr. Hartley moved for leave to proceed in forma pauperis on appeal. Dkt. No. 30. This motion is DENIED as moot.

## I. Background

Mr. Hartley has a history of neuropathy. *See generally* SAC & Exs. At various times during his incarceration, to deal with his neuropathy, Mr. Hartley has been issued an egg crate mattress and has been prescribed pain medication. *See generally id*. Those prescriptions were discontinued in the mid-2010s. *See* SAC, Ex. at 28 (stating on February 27, 2020, that Mr. Hartley's pain medication prescriptions had been discontinued years before), 44 (same, on November 2, 2019).[1]

Mr. Hartley used heroin for pain management. *See id*. at 44. On October 31, 2019, he overdosed on heroin and was taken to a nearby hospital. *See id*. A doctor at that hospital recommended that Mr. Hartley be restarted on pain medication. *See* SAC, Ex. at 44. Several days later, a psychologist within SVSP reviewed Mr. Hartley's medical records and was "inclined to agree since [Mr. Hartley] will cont[inue] to obtain illegal means to stop his chronic back pain" in the absence of medication. *Id*. The psychologist asked SVSP's medical staff to "[c]onsider gabapentin for chronic pain." *Id*. at 45. It appears that Bright decided not to prescribe Mr. Hartley gabapentin, although the timing and reasons for this decision are not clear from the pleadings or exhibits thereto. *See id*. at 27–28 (showing a grievance response issued in 2023, referring to a prescription for Tylenol and capsaicin rather than Mr. Hartley's preferred gabapentin, Neurotin, or Lyrica, but not making clear how or when the prescription decision was made).

In April 2020, Mr. Hartley requested that he be re-issued an egg crate mattress. *See id*. at 14, 53–54. This request was referred to SVSP's medical unit. *See id*. The request appears to have ultimately been denied by Bright. *See generally* SAC.

Mr. Hartley filed this action on or after February 1, 2023. *See* Dkt. No. 1 at 1. As defendants, the SAC names only Bright, the Chief Medical Officer of SVSP, and California Correctional Health Care Services ("CCHCS") in Sacramento. *See* SAC at 2.

---

[1] Pinpoint citations are to the page numbers assigned by the Court's CM/ECF filing system.

## II. Legal Standard

Federal courts must screen any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The court must identify cognizable claims and dismiss claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III. Analysis

Mr. Hartley names as defendants CCHCS and Bright. *See* SAC at 2. His claims fail as to the former. Bright must respond to the SAC.

### A. California Correctional Health Care Services

To impose liability upon an entity such as CCHCS, Mr. Hartley must establish: "(1) that he possessed a constitutional right of which he [] was deprived; (2) that the [entity] had a policy; (3) that this policy amount[ed] to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy [was] the moving force behind the constitutional violation." *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (citations and quotation marks omitted) (explaining how a government agency may be held liable under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)). If a plaintiff cannot identify an unconstitutional policy of the government agency, the plaintiff must "produce evidence creating a triable issue of fact regarding the existence of an unconstitutional practice or custom." *Gordon v. Orange County*, 6 F.4th 961, 974 (9th Cir. 2021) (no custom or practice was shown where the record lacked evidence of any other event involving similar conduct or constitutional violations). "[A] single incident of unconstitutional activity is not sufficient to impose liability under *Monell*." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985).

Here, Mr. Hartley has not alleged that the denial of his requests for an egg crate mattress and for pain medication were pursuant to CCHCS policy or practice. *See generally* SAC. Rather, he repeatedly alleges that the decision was made by Bright. *See generally id*. Mr. Hartley therefore fails to state a claim against CCHCS, and that defendant is DISMISSED.

3

**B.     Bright**

"'The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). The Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care," and to "'take reasonable measures to guarantee the safety of the inmates.'" *Id.* A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, i.e., the offending conduct was wanton, *id*. (citing *Wilson*, 501 U.S. at 297).

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104).

A prison official is deliberately indifferent if he knows a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837. The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). Consequently, for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. *See McGuckin*, 974 F.2d at 1060. The deliberate indifference standard does not require

4

a showing that the prison official acted with an improper motive, such as an intent to harm; it is enough that the official acted or failed to act despite knowledge of a substantial risk of serious harm. *Edmo v. Corizon, Inc.*, 935 F.3d 757, 793 (9th Cir. 2019).

Here, Mr. Hartley alleges that he requested treatment for his neuropathy in the form of an egg crate mattress and pain medication, and that Bright denied that request. *See generally* SAC. He alleges that other doctors, both within and outside the SVSP medical team, believed these treatments were appropriate. *See id*. Liberally construed, Mr. Hartley states a cognizable claim that Bright's decisions were medically unacceptable under the circumstances.

### IV. Motion for Pro Bono Counsel

With his initial complaint, Mr. Hartley moved to be appointed pro bono counsel. *See* Dkt. No. 3. This motion was denied by United States District Judge Beth L. Freeman. *See* Dkt. No. 6.

With his SAC, Mr. Hartley again moves to be appointed pro bono counsel. Dkt. No. 27. Mr. Hartley's second counsel motion is DENIED because he does not identify exceptional circumstances which would warrant the appointment of pro bono counsel. *See Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997) (stating that a district court may appoint counsel in "exceptional circumstances"); *see also Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981) (explaining that there is no constitutional right to counsel in a civil case). The fact that a *pro se* litigant would be better served with the assistance of counsel does not necessarily qualify plaintiff to be appointed pro bono counsel. *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986) (that plaintiff may well have fared better with assistance of counsel does not require appointment of counsel). Mr. Hartley's Eighth Amendment claim does not appear particularly complex.

Mr. Hartley's request for counsel is denied without prejudice to the Court's *sua sponte* appointment of counsel at a future date. For example, if Mr. Hartley's claim survives a summary judgment motion and a round of settlement negotiations, then the Court would *sua sponte* consider whether pro bono counsel should be appointed before the Court sets the case for trial.

### V. CONCLUSION

1. Liberally construed, the Second Amended Complaint states an Eighth Amendment deliberate indifference claim against Bright.

5

2. The Court orders service of the Second Amended Complaint on Bright. Service shall proceed under the California Department of Corrections and Rehabilitation's ("CDCR") E-Service Program for civil rights cases from prisoners in CDCR custody. In accordance with the program, the Clerk is directed to serve on CDCR via email the following documents: The Second Amended Complaint and exhibits thereto (Dkt. No. 26), this order of service, a CDCR Report of E-Service Waiver form, and a summons. The Clerk also shall serve a copy of this order on Mr. Hartley.

3. No later than **forty (40) days** after service of this order via email on CDCR, CDCR shall provide the Court a Completed CDCR Report of E-Service Waiver advising the Court whether all defendants will be waiving service of process without the need for service by the United States Marshal Service ("USMS"), or whether any defendant declined to waive service or could not be reached.

4. CDCR shall provide a copy of the CDCR Report of E-Service Waiver to the California Attorney General's Office which, within **twenty-one (21) days**, shall file with the Court a waiver of service of process for each defendant who is waiving service.

5. If any defendant does not waive service, then upon receipt of the CDCR Report of E-Service Waiver, the Clerk shall prepare a USM-285 Form. The Clerk shall provide to the USMS the completed USM-285 forms and copies of this order, the summons, and the operative complaint for service upon the non-waiving defendant. The Clerk also shall provide to the USMS a copy of the CDCR Report of E-Service Waiver.

6. No later than **ninety (90) days** from the filing date of this order, defendant shall file **one comprehensive motion for summary judgment or other dispositive motion** with respect to the Second Amended Complaint. Any motion for summary judgment shall be supported by adequate factual documentation and shall conform in all respects to Rule 56 of the Federal Rules of Civil Procedure. A motion for summary judgment also must be accompanied by a separate *Rand* notice so that Mr. Hartley will have fair, timely and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), must be served

6

concurrently with motion for summary judgment). Defendant is advised that summary judgment cannot be granted, nor qualified immunity found, if material facts are in dispute.

7. If any defendant is of the opinion that this case cannot be resolved by summary judgment, he or she shall so inform the Court prior to the date the summary judgment motion is due. Information regarding the Court's Alternative Dispute Resolution Program is available on the website for the United States District Court for the Northern District of California.

8. Mr. Hartley's opposition to the dispositive motion shall be filed with the Court and served on defendant no later than **twenty-eight (28) days** from the date defendants' motion is filed. Mr. Hartley is advised to read Rule 56 of the Federal Rules of Civil Procedure and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim).

9. Defendant **shall** file a reply brief no later than **fourteen (14) days** after Mr. Hartley's opposition is filed.

10. All communications by Mr. Hartley with the Court must be served on defendants or defendants' counsel once counsel has been designated, by mailing a true copy of the document to defendants or defendants' counsel.

11. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. **No further court order under Federal Rule of Civil Procedure 30(a)(2) is required before the parties may conduct discovery.** Mr. Hartley is advised to read Federal Rule of Civil Procedure 37, which requires each party to "in good faith confer[] or attempt[] to confer with" the opposing party regarding a discovery dispute, before seeking court action to resolve such a dispute.

12. It is Mr. Hartley's responsibility to prosecute this case. Mr. Hartley must keep the Court informed of any change of address by filing a separate paper with the Clerk headed "Notice of Change of Address." He also must comply with the Court's orders in a timely fashion. Failure to do so will result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

13. The Clerk shall update the caption to reflect that only Dr. Bright remains a defendant to this action.

Dated: December 4, 2025

_____
P. Casey Pitts
United States District Judge